## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | |
|---|---|
| **CHARLES BRADSHAW,** | ) |
| **Claimant,** | ) ) ) |
| vs. | ) Case No. 7:17-cv-493-CLS ) |
| **NANCY A. BERRYHILL, Acting Commissioner, Social Security Administration,** | ) ) ) ) ) |
| **Defendant.** | ) |

### MEMORANDUM OPINION AND ORDER

Claimant, Charles Bradshaw, commenced this action on March 29, 2017, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying his claim for a period of disability, disability insurance, and supplemental security income benefits.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. Specifically, claimant asserts that the ALJ improperly considered the consultative examiner's opinion and improperly failed to find that claimant was entitled to a closed period of disability. Upon review of the record, the court concludes those contentions lack merit, and the Commissioner's ruling is due to be affirmed.

**A.     Consultative Examiner Opinion**

Claimant's first assertion is that the ALJ improperly considered the opinion of consultative examiner Dr. Julia Boothe. Social Security regulations provide that, in considering what weight to give *any* medical opinion (regardless of whether it is from a treating or non-treating physician), the Commissioner should evaluate: the extent of the examining or treating relationship between the doctor and patient; whether the doctor's opinion can be supported by medical signs and laboratory findings; whether the opinion is consistent with the record as a whole; the doctor's specialization; and other factors. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). *See also Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) ("The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments."). Additionally, the ALJ is not required to accept a conclusory

statement from any medical source that a claimant is unable to work, because the decision whether a claimant is disabled is not a medical opinion, but is a decision "reserved to the Commissioner." 20 C.F.R. §§ 404.1527(d), 416.927(d).

Dr. Boothe examined claimant on August 31, 2015. Claimant reported a work history of "hanging steel, construction, logging; all manual labor jobs."[1] He also reported chronic pain in his back, left hip, and both legs after a fall at work in June of 2012 and back surgery in July of 2013. The condition caused numbness and tingling in claimant's leg, which sometimes caused him to stumble, but not to fall. During the clinical examination, Dr. Boothe found normal muscle tone and mass, but unsteady gait. Claimant exhibited limited range of motion in his spine, hip, knee, and shoulder, and mild impairment of his dexterity and grip strength.[2]

Dr. Boothe completed a "Medical Source Statement Of Ability To Do Work-Related Activities (Physical)" form, indicating that claimant could occasionally lift and carry up to twenty pounds, but could never lift or carry more than twenty pounds. Claimant could sit for one hour at a time, and for a total of four hours in an eight-hour work day. He could stand and walk for fifteen minutes at a time, and for a total of one hour each, during an eight-hour work day. For the remainder of the eight-hour work day, claimant would need to recline on the floor to relieve his back pain and

---

[1] Tr. 344.
[2] Tr. 347-48.

stiffness. Claimant required the use of a cane to ambulate distances of more than ten to twenty feet. He could occasionally reach, handle, finger, feel, push, and pull with both hands, and could occasionally use both feet to operate foot controls. He could never climb, balance, stoop, kneel, crouch, or crawl. He could occasionally work around moving mechanical parts and operate a motor vehicle, but he could never work around unprotected heights or be exposed to humidity, pulmonary irritants, extreme cold and heat, or vibrations. Claimant could shop; travel without a companion; ambulate without a wheelchair, walker, two canes, or two crutches; prepare simple meals; feed himself; care for his personal hygiene; and sort, handle, and use paper and files. He could not walk a block at a reasonable pace on rough or uneven surfaces, use standard public transportation, or climb a few steps at a reasonable pace with the use of a single hand rail. Dr. Boothe indicated that claimant's limitations began on June 26, 2012, the date of his on-the-job injury, and that they would continue for twelve consecutive months.[3]

Due to claimant's unsteady gait, Dr. Boothe opined that claimant "doesn't appear to physically be able to complete tasks that would be required for manual labor," although he "does seem motivated and has begun using a cane on his own to assist with ambulation."[4] She also stated that claimant was "limited with regard to

---

[3] Tr. 347-55.
[4] Tr. 345.

4

sitting, standing, walking, lifting, [and] carrying objects to the point that routine manual labor would not be possible."[5]

The ALJ afforded little weight to Dr. Boothe's assessment because it was

> based heavily upon the subjective complaints of symptoms rather than objective medical findings and it is inconsistent with the record as a whole. For example, Dr. Boothe opined that the use of a cane was medically required, yet the record does not show Dr. Edwards [the physician who performed claimant's back surgery] or any other medical professional ever prescribed the use of an ambulatory assistive device . . . . In fact, Dr. Boothe's own examination notes show the claimant admitted purchasing the cane himself ("Pt bought cane himself to help with balance") . . . . Not to mention, once again, the record does not document any medical treatment since March 2014.

Tr. 23 (alteration and ellipses supplied).

Claimant asserts that the ALJ did not adequately articulate his reasons for rejecting Dr. Boothe's opinion. The court disagrees. The ALJ reasoned that Dr. Boothe's opinion was based largely upon claimant's subjective complaints, and he even gave the example of the cane claimant had been using, because the cane had not been prescribed by any medical provider. He also reasoned that Dr. Boothe's opinion was not supported by the record as a whole, particularly since claimant had not received any medical treatment since March of 2014. Earlier in the opinion, the ALJ explained that claimant's subjective complaints of disabling pain were not supported by the medical record because there were no objective test results confirming

---

[5] Tr. 346 (alteration supplied).

claimant's symptoms, and because claimant's physicians had rendered normal clinical findings, like full muscle strength, ability to heel and toe walk, normal reflexes, lack of tenderness, and negative straight-leg-raising tests. The ALJ also found that claimant's post-surgical medical records reflected good improvement and lack of pain.[6] Those findings add additional depth to the ALJ's decision not to give full weight to Dr. Boothe's opinion because it was not supported by the medical record.

Claimant also asserts that the ALJ misstated evidence to justify his rejection of Dr. Boothe's opinion. The ALJ characterized claimant's testimony from the administrative hearing as stating that he had renewed his hunting club membership "last year."[7] Claimant correctly points out that his testimony actually was that he had renewed his membership "the year before last."[8] Thus, the ALJ made an incorrect factual finding, but the error was harmless. The administrative hearing was conducted on October 7, 2015.[9] Regardless of whether claimant renewed his membership the year before the hearing (*i.e.,* 2014), or two years before (*i.e.,* 2013), the renewal occurred *after* the work accident that allegedly caused claimant's disability, and *after* claimant's alleged disability onset date of December 4, 2012.

Finally, claimant asserts that the ALJ erroneously noted that he "reported

---

[6] Tr. 21-22.
[7] Tr. 22.
[8] Tr. 44.
[9] *See* Tr. 30.

6

building *deer stands* during a physical therapy session in November 2013."[10] In actuality, claimant reported building *a single deer stand*, not *multiple deer stands*, and he complained that afterward, his back and legs "locked up," rendering him unable to move.[11] Again, however, the ALJ's factfinding error was harmless, because the difference between building one deer stand and building multiple deer stands is immaterial. Regardless of how many stands claimant built, the point is that he was conducting activities that were inconsistent with his complaints of disabling pain.

In summary, reversal of the ALJ's administrative decision is not warranted on the ground that he improperly considered the opinion of consultative physician Julia Boothe.

**B.    Closed Period of Disability**

Claimant also asserts that, even if he is not entitled to an ongoing award of benefits, the ALJ should have found him to be entitled to a closed period of disability from his alleged onset date of December 4, 2012, to March 2014, when he was deemed to have reached maximum medical improvement and released by his workers' compensation physician to return to work with permanent restrictions of lifting no more than fifteen pounds.[12] It is true that, until March 2014, the workers'

---

[10] Tr. 22.
[11] Tr. 306.
[12] *See* Tr. 494.

compensation physician regularly stated that claimant was not able to return to work.[13] But, in the workers' compensation context, that is just a determination that claimant was unable to return to return *to his previous position*, which involved manual labor and heavy lifting. In the Social Security context, claimant must demonstrate that he cannot perform *any job* that exists in significant numbers in the national economy. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (defining a "disability" as an "inability to engage in *any substantial gainful activity* by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."). The ALJ's decision that claimant had not satisfied that burden was supported by substantial evidence.

**C.** **Conclusion and Order**

Consistent with the foregoing, the court concludes that the ALJ's decision was based upon substantial evidence and in accordance with applicable legal standards. Accordingly, the decision of the Commissioner is AFFIRMED. Costs are taxed against claimant. The Clerk is directed to close this file.

DONE this 17th day of October, 2017.

_____
United States District Judge

---

[13] *See, e.g.,* Tr. 486, 492.